JULIA WILLIAMS AND LEWIS WILLIAMS v. ALLAN SHELDEN, GEORGE A. OWEN, JOHN A. MURRAY, ARCHIBALD Y. GRAY, HENRY T. BEADLE, AND GEORGE S. WELLS.

*Directing verdict—Held error in this case—Notice to tenant of mortgagor, by vendee at foreclosure sale, of such purchase— With claim of title and that rent is due and payable to him—Must be personally served to be available as a legal foundation for proceedings against tenant—Firm mortgage— Land bid in at foreclosure sale by one partner—If tenant rents premises of the firm, paying it rent as landlord and owner, question of legal title unimportant—Firm is responsible for what it has assumed to do as lessor in firm name—Decision of disputed questions of fact is for the jury —No presumption that a firm has any less power to rent its realty than an individual—A firm may own land the legal title to which is in one partner.*

1. On a review of the testimony in this case [see opinion], *held*, that the court erred in directing a verdict for defendants.

2. A notice by a purchaser at a mortgage foreclosure sale to a tenant of the mortgagor, of such purchase, coupled with a claim of title in the *vendee* and statement that rent is due and payable to *him*, and that *he* desires to hear from the tenant, must be *personally* served in order to be made available as a legal foundation for proceedings to put the tenant in responsibility.

3. Where one copartner bids in mortgaged premises at a foreclosure sale in his own name, and the tenant of the mortgagor, in *possession*, rents the property of the firm and pays the rent to the firm as landlord, receiving receipts therefor signed in the copartnership name, it is of no consequence *who* was the *real* owner; if the firm *acted* as such; and it is responsible for what it has assumed to do as lessor in the firm name.

4. It is not within the province of a trial court to decide disputed facts, or to draw inferences from such facts as are sworn to on either side.

5. There is no legal presumption that a firm has any less power to rent its realty than any one else.

6. Land may belong to a partnership although the *legal* title is held in the name of one partner.

Error to Wayne. (Jennison, J.) Argued April 27, 1886. Decided May 6, 1886.

Assumpsit. Plaintiffs bring error Reversed. **The facts** are stated in the opinion.

*Stewart & Galloway*, for appellants:

The extent of the authority of copartners is not measured, as to third persons, by the partnership articles, but from the character of their dealings and the manner in which they hold themselves out to the public: *Catlin, Peeples & Co. v. Gilder's Exrs.*, 3 Ala. 536.

The fact that defendants are engaged in the wholesale dry-goods business has but little to do with this question; if the holding of this real estate was incident to such business, it was not beyond its scope: *Davis v. Cook*, 14 Nev. 265; *Brooke v. Washington*, 8 Gratt. 250; *Weaver v. Tapscott*, 9 Leigh, 424; *Burnley v. Rice*, 18 Texas, 494; *Sandilands v. Marsh*, 2 Barn. & Ald. 673; Parsons on Part. p. 172.

Frauds committed by one partner in the course of the partnership business bind his copartners, who had no knowledge thereof or participation therein: *Wolf v. Mills*, 56 Ill. 360.

The owner of a horse borrowed by *one* partner for use for the firm, and lost through *his* neglect or other wrong-doing, may recover for his loss of the firm: *Witcher v. Brewer*, 49 Ala. 119.

The purchase of a large amount of middlings to keep the mill running in the " dull season" was held within the " scope " of the business of a *custom* grist mill, in *Leffler v. Rice*, 44 Ind. 103.

A note given in the firm name for money borrowed by one partner in that name, but used in his private business, is binding if the payee is not a party to the fraud on the other copartners: *Onondaga Co. Bank v. DePuy*, 17 Wend. 47; and it is of no consequence to third parties dealing in good faith with one partner how he acts towards his copartners, if such dealing is within the *apparent scope* of his authority, and professedly for the firm: *Pahlman v. Taylor*, 75 Ill. 629. And see *LeRoy v. Johnson*, 2 Peters, 186.

Notice to third persons of fraudulent dealings by one partner, if alleged as a defense, must be proved by those making such allegation: *Whitaker v. Brown*, 16 Wend. 505–11; *Carrier v. Cameron*, 31 Mich. 373.

*Meddaugh, Driggs & Harmon*, for defendants:

" No rule is better settled than that one partner cannot bind his copartner by any contract not within the immediate scope

of the partnership, unless with such copartner's knowledge and consent. Each partner is an agent for all the members of the firm in the transaction of all business of such firm; but as to matters foreign to such business, he is regarded as a stranger." "And the knowledge and assent required to bind the copartner must be established by affirmative evidence showing it, or from which it may be clearly inferred :" *Barnard v. L. & P. H. Plank Road Co.*, 6 Mich. 277.

CAMPBELL, C. J. Plaintiffs sued defendants, who make up the firm of Allan Shelden & Co., of Detroit, for breach of an agreement to repair the roof of a tenement rented for business purposes in Wyandotte, Wayne county.

Plaintiffs claimed and introduced testimony to show that they occupied the premises under a former owner, who had mortgaged them to Allan Shelden for the benefit of defendants; and that in the early part of 1883, when the mortgage had been foreclosed, they were visited by one Leal, who claimed to be defendants' agent, with whom they made an agreement to lease, provided defendants would repair the roof. The rent was to be $12 a month. After waiting some little time for repairs, they called at the store of the firm in Detroit, as they claim, and made an arrangement with defendant Wells, who told them to remain and the roof should be fixed.

The testimony for plaintiffs negatives receiving information from any one that the property belonged to Shelden personally, and the only definite testimony to the contrary was a notice in the name of the firm, mailed to plaintiffs, announcing the purchase by Shelden, and asking to hear from plaintiffs. This was not shown to have reached them, and was of such a nature that personal service was essential to make it a legal foundation for any proceeding to put them in responsibility.[1]

---

[1] "DETROIT, Mich., Feb. 21st, 1883.
"Messrs. Williams & Son,
          "Wyandotte, Mich.,
     "GENTLEMEN: The store property you now occupy was bid in at mortgage foreclosure sale by our Mr. Shelden, January 13th, and he has title from that date. Rent is due and payable to him. Please let us hear from you, and oblige, Yours,
                              "ALLAN SHELDEN & Co."

A receipt for the first month's rent was given in the firm name, and the subsequent rent was drawn for in the firm name, and the drafts paid. These papers were given by authority, and were shown by the partners to be customary for the firm on behalf of Mr. Shelden. There was full proof of damages from weather.

Defendants introduced testimony disputing the facts as to the agreement for repairs, and to show that before the mortgage held by Mr. Shelden on behalf of the firm was foreclosed he took it on his own account, and the matter was equalized on the firm books by proper credits to the rest. No other transfer was made. They also introduced testimony denying any authority to make such agreements for the firm as plaintiffs sued on.

The Wayne circuit court directed a verdict for defendants, on the ground that there was no testimony of such authority.

We think the case should have gone to the jury.

As among themselves, the defendants showed an understanding that the land was Mr. Shelden's, and it stood in his name. But the receipts and drafts for rent purported, on their face, to be on behalf of the firm, and if the firm had power to fix and receive rent for its lands, it had power to make any other ordinary landlord's agreement. There is no legal presumption that a firm has any less power to rent its realty than any one else. If plaintiffs' testimony was believed, the jury might properly have found that they rented the property of the firm, and if they were so given to understand, and paid their rent to the firm as landlords, and continued to hold under them, it is of no consequence who was the real owner, if defendants acted as such. They are responsible for what they may have assumed to do as lessors in the firm name.

There was also testimony which should have gone to the jury upon the question of ownership itself as presented to the world outside, whatever equities existed among the partners. Land may belong to a partnership although in the name of one partner. In the present case the record appears to indicate, what is admitted to be the fact, that the mort-

gage which was foreclosed originally belonged to the firm, and that this should have appeared, and probably did appear, on its face, or in the foreclosure proceedings. Where the land is bid in by a mortgagee, it is usually in the same right as the mortgage itself was held. It does not appear that Mr. Shelden ever personally asserted any change of right, or interfered with the property. To all outward appearance there was enough to justify plaintiffs, if acting in good faith, in giving credit to any assertion or management of the title by the firm, so that as to them the firm may have fairly been treated as holding the room of owners, wherever the title may have been.

It was not within the province of the court to decide disputed facts, or to draw inferences from such facts as were sworn to on either side. The facts not disputed were in no way decisive of the rights of third persons, to whom they were not brought home. In our view, the case should have been left to be decided like other jury cases.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.