### SWIATKOWSKI *v.* KROLL.

1. APPEAL AND ERROR—PARTNERSHIP—GREAT WEIGHT OF EVIDENCE.
    Findings of trial judge that partnership existed and that it owned real estate and other assets, made in suit for dissolution of partnership between plaintiff and his stepson, were not against the great weight of the evidence under record presented.

2. PARTNERSHIP—DISSOLUTION—STALE CLAIM.
    Claim that plaintiff was entitled to certain undistributed profits, even if meritorious, came too late in suit for dissoluton of a partnership and an accounting, where plaintiff had waited over 6 years before asserting the claim.

3. SAME—TITLE IN NAME OF ONE PARTNER—TRUSTS.
    Defendant partner, in whose name title was placed, was a trustee for the partners, where property was purchased as partnership property and plaintiff paid a part of the consideration.

4. APPEAL AND ERROR—EVIDENCE—OBJECTION FIRST RAISED ON APPEAL.
    Claim that photostatic copies of records of the sales tax and use tax division of the State department of revenue were not properly admitted in evidence because of confidential nature of such records *held*, too late, even if it had any merit, where introduced in response to a *subpoena duces tecum* and such objection was raised for the first time on appeal (CL 1948, § 205.70, as amended by PA 1949, No 272).

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 40 Am Jur, Partnership § 334.
[3] 54 Am Jur, Trusts §§ 207, 208.
[4] 3 Am Jur, Appeal and Error § 343 *et seq.*

Appeal from Macomb; Noe (Alton H.), J. Submitted June 8, 1951. (Docket No. 54, Calendar No. 45,118.) Decided September 5, 1951.

Bill by Leon Swiatkowski against Stanley Kroll and wife for dissolution of partnership and other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Bruno L. Blinstrub* and *Charles A. Retzlaff,* for plaintiff.

*Goldsmith & Shapiro,* for defendants.

Butzel, J. Leon Swiatkowski, plaintiff, brought suit against Stanley Kroll, also known as Stanley King, defendant herein, for dissolution of an alleged partnership, an accounting and other relief. Victoria Kroll, wife of the defendant, was joined as a codefendant to reach her interest in real estate and other partnership assets. Plaintiff is the stepfather of the defendant. The parties are of foreign extraction and seem not too well educated. The record indicates that some of the testimony may be the result of forgetfulness or outright perjury. The testimony was conflicting, but after seeing and hearing the parties and examining the exhibits, the court found that there was a partnership, to which real estate and other assets belonged, and granted plaintiff the relief prayed for.

Plaintiff for 31 years was steadily employed at the Ford Motor Company and in later years the defendant worked at Chrysler's. Their hours of employment were staggered, plaintiff completing his day's work at 2 p. m., and defendant beginning his at 3 p. m. During their time off, they opened and operated a gas station at the northwest corner of Van Dyke and the Eight Mile Road, Baseline,

Michigan, the real estate herein involved and here-
inafter referred to. The business evidently was
profitable for a time. Codefendant also assisted.
In January, 1943, the business closed and the assets
were sold for $200. In September, 1943, the business
was reopened on a profitable basis. Plaintiff claims
that the business was reopened by himself and de-
fendant as equal copartners, while defendants assert
that this is untrue, and that the defendants were the
sole owners of the business, and plaintiff worked for
them, his compensation being 50% of the profits. No
written agreements were entered into, no partner-
ship certificate filed, no books kept, no commercial
bank account opened, and with the exception of a few
memoranda made on a calendar at times and then
destroyed, no account was kept by them or any of
them. The only written evidence before the court
consisted of the sales tax records filed with the Mich-
igan department of revenue and some income tax re-
turns of not too explanatory a nature. There are
records of purchases from the suppliers of gasoline,
et cetera, and the markup on sales to retail customers
at the station may be ascertainable.

When the station reopened in 1943, it was the
plaintiff who negotiated for the purchase of the real
estate and who paid as a deposit on the purchase
price the sum of $200, which he claims came from
his own funds, but which the defendant claims he
gave plaintiff for the very purpose of making the de-
posit. The purchase price was $10,000 and the ad-
ditional $9,800 was paid by the defendant. Plaintiff
claims that in addition to the $200, he paid the fur-
ther sum of $1,800 to the defendant and it was
agreed that the balance of $3,000 towards the plain-
tiff's one-half share would be regarded as a loan by
the defendant, to be repaid later. The title was
taken in the name of the defendant. Plaintiff claims
that defendant agreed to deed him a one-half inter-

est in the property on the receipt of the $3,000 which defendant had advanced for the plaintiff. A few days after the purchase of the property, defendant leased it to Standard Oil Company, which in turn gave him a 1-year lease. The lease was renewed from year to year. At one time defendant paid $500 from his own funds for a tank for the station. Plaintiff claims that he paid $500 from his own funds at the time for gasoline for the tank. The taxes were paid from the receipts of the business. The relationship continued until 1949 when this suit was commenced. A divorce suit was pending at the time of the hearing in the instant case between plaintiff's wife, mother of the defendant, and the plaintiff. Possibly this was a cause of the business difficulties.

The sales tax returns each year after 1943, when the station was reopened, show that it was run solely in plaintiff's name, although he does not claim sole ownership. One exhibit consisting of a photostatic copy of an application for renewal of a sales tax license describes the business as a partnership, naming both plaintiff and defendant as partners. In the application for a new sales tax license made by defendant in 1943, after the purchase of the property, defendant states in his own handwriting "we were closed." In a letter to the department of revenue in September, 1943, asking for sales tax forms and the sticker for the window and giving business address as that of plaintiff, defendant also wrote, "I reopened the gas station again on September 14, 1943," defendant signing plaintiff's sole name and the address of the station. On other documents, codefendant signed plaintiff's name. Defendant attempted to explain away these obvious inconsistencies with his defense by stating that as plaintiff planned to purchase the business later, his name alone was used in the documents to the State. The trial judge was not impressed by the explanation.

It would serve no useful purpose to further detail the testimony or the recital in certain income tax returns. Notwithstanding some testimony or deductions therefrom in defendant's favor, the testimony preponderates in plaintiff's favor. The only questions raised on appeal are the claims that the findings of the judge were against the great and overwhelming weight of the evidence and that the evidence did not prove a partnership as claimed. We find no merit in either of these claims.

Plaintiff has not cross-appealed. He, however, contends in his brief that the trial court erred in finding that he still owed $3,000 to the defendant. He claims that the undistributed profits due him from 1939 to 1943 were more than sufficient to have paid the $3,000 as well as an additional amount. Even if the claim has any merit, we find none in the present record. Plaintiff waited over 6 years before asserting his claim. It comes too late for further consideration.

Plaintiff devotes considerable space in his brief to show that if the property was purchased by the partners as partnership property and plaintiff paid part of the consideration, it became partnership property and that the partner in whose name the title was placed is trustee for the partners. *Williams* v. *Shelden,* 61 Mich 311; *Murray* v. *Keeley Institute of Western Michigan,* 190 Mich 295. As defendant does not deny this statement of the law, it requires no further consideration.

The sole question of law that appellants raise, as applied to the facts, is that the photostatic copies of records of the sales tax and use tax division of the Michigan department of revenue should have been excluded as confidential communications under CL 1948, § 205.70, as amended by PA 1949, No 272 (Stat Ann 1950 Rev § 7.541), part of which provides that:

"Unless in accordance with a judicial order, or as shall be required in proper administration of this act, no member of the department, or agent or employee thereof, or former member, agent or employee, shall divulge any facts or information obtained in connection with the administration of this act."

The exhibits were introduced in response to a *subpoena duces tecum*. The only objection made at the hearing was that the exhibits were irrelevant, incompetent and immaterial to prove a partnership. The new objection, now raised for the first time, even if it had any merit, comes too late to require further discussion.

The decree of the trial court is affirmed, with costs to plaintiff.

Reid, C. J., and Boyles, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.